UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STERLING D. WOOTEN, JR.,<br><br>                     Plaintiff,<br><br>-against-<br><br>SELECT BANCORP, INC., WILLIAM L. HEDGEPETH II, J. GARY CICCONE, GERALD W. HAYES JR., RONALD V. JACKSON, JOHN W. MCCAULEY, CARLIE C. MCLAMB JR., SHARON L. RAYNOR, W. LYNDO TIPPETT, ALICIA SPEIGHT HAWK, V. PARKER OVERTON, and K. CLARK STALLINGS,<br><br>                     Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Sterling D. Wooten, Jr. ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Select Bancorp, Inc. ("Select" or the "Company"), and the members of Select's board of directors (the "Board" or the "Individual Defendants" and together with Select, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger between First Bancorp ("First Bancorp") and Select (the "Proposed Merger").

2.      On June 1, 2021, First Bancorp and Select entered into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement"), pursuant to which each outstanding share of Select's common stock, par value $1.00 per share, except for specified shares of Select common

stock owned by Select or First Bancorp, will be converted into the right to receive 0.408 shares of First Bancorp's common stock, no par value (the "Merger Consideration"). First Bancorp shareholders will not receive any Merger Consideration. Based on the $45.41 closing price of First Bancorp's common stock on June 1, 2021, the last trading day before public announcement of the Proposed Merger, the 0.408 exchange ratio represented approximately $18.53 in value for each share of Select common stock. Upon completion of the Proposed Merger, Select will merge with and into First Bancorp and First Bancorp will assume the assets and liabilities of Select.

3.      On July 2, 2021, in order to solicit Select shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading registration statement on Form S-4 (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Select, First Bancorp, and the combined company, (ii) the valuation analyses performed by Select's financial advisor, Raymond James & Associates, Inc. ("Raymond James") in support of its fairness opinion, (iii) the potential conflicts of interest of Raymond James, and (iv) the sales process leading up to the Proposed Merger.

5.      The special meeting of Select shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Merger and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material

information discussed herein is disclosed to Select's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9.     Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Select's common stock trades on The Nasdaq Stock Market, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

10.     Plaintiff is, and at all relevant times has been, a shareholder of Select.

11.     Defendant Select is a holding company for Select Bank & Trust Company which operates for the primary purpose of serving the banking needs of individuals and small to medium-sized businesses in its market area.  Select Bank offers a range of banking services including checking and savings accounts, commercial, consumer, mortgage and personal loans, and other associated financial services.  Select is a North Carolina corporation with headquarters in Dunn, North Carolina and its common stock trades on the Nasdaq under the ticker symbol "SLCT."

12.     Individual Defendant William L. Hedgepeth II is, and has been at all relevant times, a director and the Chief Executive Officer and President of Select.

13.     Individual Defendant J. Gary Ciccone is, and has been at all relevant times, a director of Select and Chairman of the Board.

14.     Individual Defendant Gerald W. Hayes Jr. is, and has been at all relevant times, a director of Select.

15.     Individual Defendant Ronald V. Jackson is, and has been at all relevant times, a director of Select.

16.     Individual Defendant John W. McCauley is, and has been at all relevant times, a director of Select.

17.     Individual Defendant Carlie C. McLamb Jr. is, and has been at all relevant times, a director of Select.

18.     Individual Defendant Sharon L. Raynor is, and has been at all relevant times, a director of Select.

19.     Individual Defendant W. Lyndo Tippett is, and has been at all relevant times, a

director of Select.

20.     Individual Defendant Alicia Speight Hawk is, and has been at all relevant times, a director of Select.

21.     Individual Defendant V. Parker Overton is, and has been at all relevant times, a director of Select.

22.     Individual Defendant K. Clark Stallings is, and has been at all relevant times, a director of Select.

23.     The Individual Defendants referred to in ¶¶ 12-22 are collectively referred to herein as the "Individual Defendants" and with Select they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

24.     Select is the holding company for Select Bank & Trust Company.  The company currently operates 22 full-service banking locations in North Carolina, South Carolina, and Virginia.

25.     First Bancorp is a holding company for First Bank and is headquartered in Southern Pines, North Carolina, with total assets of approximately $7.1 billion.  Its principal activity is the ownership and operation of First Bank, a state-chartered community bank that operates 101 bank branches in North Carolina and South Carolina. First Bancorp is a North Carolina corporation and its common stock trades on the Nasdaq under the ticker symbol "FBNC".

26.     On June 1, 2021, Select and First Bancorp issued a joint press release announcing the Proposed Merger, which states in relevant part:

### First Bancorp to Acquire Select Bancorp, Inc.

SOUTHERN PINES, N.C. and DUNN, N.C., June 1, 2021 /PRNewswire/ -- First Bancorp (Nasdaq: FBNC), the parent company of First Bank, and Select Bancorp,

Inc. ("Select") (Nasdaq: <u>SLCT</u>), the parent company of Select Bank and Trust Company ("Select Bank"), announced today the signing of a definitive merger agreement under which First Bancorp will acquire Select in an all-stock transaction with a total current value of approximately $314.3 million, or $18.10 per share, based on First Bancorp's stock price as of May 28, 2021.

The merger agreement has been unanimously approved by the boards of directors of each company. The transaction is expected to close in the fourth quarter of 2021 and is subject to customary conditions, including shareholder and regulatory approval. Subject to the terms of the merger agreement, Select shareholders will receive 0.408 shares of First Bancorp's common stock for each share of Select common stock.

Select Bank currently operates twenty-two banking locations in North Carolina, South Carolina, and Virginia and has the leading community bank market share in Fayetteville, NC and a presence in the key North Carolina growth markets of Raleigh, Charlotte, and Wilmington. As of March 31, 2021, Select reported assets of $1.8 billion, loans of $1.3 billion, and deposits of $1.6 billion. The acquisition complements First Bank's existing footprint and provides entry into several new markets.

"Select Bank is a high quality institution with a long-standing history of service and strong community banking relationships," said Richard Moore, Chief Executive Officer of First Bancorp. "We are thrilled that the Select Bank team will be joining First Bank, and we look forward to the opportunity to serve their customers."

Upon completion of the acquisition, the combined company is expected to have over $9 billion in assets, $6 billion in loans, and $8 billion in deposits. This transaction represents an opportunity to further cement First Bank's position as the preeminent community bank in North Carolina in a way that is attractive for all stakeholders involved.

"We are very excited about this partnership and the unique opportunity it presents," said Bill Hedgepeth, President, CEO, and Director of Select. "We have long admired First Bancorp, and our combined company will be positioned to capitalize on an enhanced presence in exceptional markets, talent, and financial strength."

Keefe, Bruyette & Woods, Inc. served as financial advisor to First Bancorp and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP provided legal counsel. Raymond James & Associates, Inc. served as financial advisor to Select Bancorp, Inc., and Wyrick Robbins Yates & Ponton LLP served as legal counsel.

**INVESTOR PRESENTATION**

Further information on the terms of this transaction will be included in Form 8-Ks to be filed by First Bancorp and Select Bancorp, Inc. with the Securities and

Exchange Commission (the "SEC").

**First Bancorp**

First Bancorp is the holding company for First Bank and is headquartered in Southern Pines, North Carolina. The company currently operates 102 bank branches, with 96 branches operating in North Carolina and 6 branches in South Carolina (Cheraw, Dillon, Florence, and Latta).

**Select Bancorp, Inc.**

Select Bancorp, Inc. is the holding company for Select Bank & Trust Company and is headquartered in Dunn, North Carolina. The company currently operates 22 full-service banking locations in North Carolina, South Carolina, and Virginia.

## II.    The Proxy Omits Material Information

27.    On July 2, 2021, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants had a duty to carefully review the Proxy before it was filed with the SEC and disseminated to Select's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for Select's shareholders to make an informed decision in connection with the Proposed Merger.

A.    <u>The Misleadingly Incomplete Financial Projections</u>

28.    First, the Proxy omits the financial projections for Select, First Bancorp, or the combined company (the "Omitted Projections").

29.    The Omitted Projections served as a material factor in the Select Board's decision to approve the Proposed Merger and for Raymond James to find the Merger Consideration "fair" to Select shareholders. The Omitted Projections are plainly material and speak squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed Merger: is a smaller stake in the combined company more or less valuable than a full stake in the standalone company? Without the Omitted Projections, Defendants present the

Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger. The omitted financial projections are plainly material to shareholders and must be disclosed.

30.     If a proxy statement broaches the subject of valuation information, such information must be complete and accurate.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by Raymond James and the Board but have failed to disclose the Omitted Projections. These omissions render the summary of each entity's value and financial picture in the Proxy misleadingly incomplete.

   B.     The Misleadingly Incomplete Summary of Raymond James' Valuation Analyses

31.     The Proxy describes Raymond James' fairness opinion and the various valuation analyses performed in support of its opinion.  Defendants concede the materiality of this information by including Raymond James' fairness opinion and its valuation analyses among the "material" factors considered in recommending the Proposed Merger. Proxy at 44.  However, the summary of Raymond James' fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Select's shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Raymond James' fairness opinion in determining whether to vote in favor of the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to Select's shareholders.

32.     In summarizing the *Selected Companies Analysis* and the *Selected Transaction Analysis*, the Proxy fails to disclose the individual metrics of each company or transaction utilized

in the analyses. A fair summary of a comparable companies or transactions analysis requires the disclosure of the individual metrics for each company or transaction used in the analysis. Merely providing a range of the metrics that a banker calculated without further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate metrics, or, instead, applied unreasonably low metrics in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of these analyses provided in the Proxy misleadingly incomplete.

33.     In summarizing the *Discounted Cash Flow Analysis* prepared by Raymond James, the Proxy fails to disclose the following key information: (i) the actual unlevered free cash flows used in the analysis, (ii) the inputs and assumptions underlying each discount rate range (including the values of the company-specific WACC/CAPM components), and (iii) the actual terminal values calculated for the analysis.

34.     These key inputs are material to Select shareholders, and their omission renders the *Discounted Cash Flow Analysis* materially misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation

techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78.

35.      These material omissions render the summary of the valuation analyses included in the Proxy misleadingly incomplete.

C.      Raymond James' Conflicts of Interest

36.      The Proxy fails to disclose potential conflicts of interest involving Raymond James.  The Proxy states that during the two years preceding Raymond James' opinion, it has engaged in certain fixed income trading activity with Select Bank, conducted certain share repurchases on behalf of Select and engaged in certain fixed income trading activity with First Bank.  Proxy at 52.  The Proxy, however, does not disclose the compensation paid to Raymond James for these services.

37.      It is important for shareholders to receive sufficient information to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its work or how much scrutiny to give the Proposed Merger. A reasonable shareholder would want to know what important economic motivations that the advisor might have, especially when those motivations could lead them to favor the interests of certain transactions or particular shareholders over others, and especially where, as here, the fee for advisory services is contingent upon the closing of the Proposed Merger. The failure to disclose this information represents a material omission.

D.      The Background of the Merger

38.      The Proxy contains a misleadingly incomplete summary of the events leading up to the Proposed Merger that omits material facts. Once a company travels down the road of partial disclosure of the history leading up to a merger, it has an obligation to provide shareholders with an accurate, full, and fair characterization of those historic events. Even a non-material fact can trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

39.      First, the summary provided in the Proxy fails to disclose whether Select entered into confidentiality or nondisclosure agreements with First Bancorp, "Bank A," "Bank B" or "Bank C" containing standstill and/or "don't ask don't waive" ("DADW") provisions.

40.      The express communication of the existence of these provisions is material to Select shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer a better deal.  The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could have made a superior proposal. However, if those non-disclosure agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

41.      Second, the Proxy states that Individual Defendant William L. Hedgepeth II will be employed as an Executive Vice President of First Bank, for a period commencing upon the effective time of the Proposed Merger and ending June 30, 2022 for lucrative base salary, bonus

and other compensation.  Proxy at 67.  Additionally, two directors of Select will continue on as directors of the combined company.  Proxy at 68.  Yet, the Proxy fails to specify the timing and nature of the negotiations leading to these determinations. Such information is important to shareholders because negotiating for continued employment and Board seats is a conflict of interest that could cause the Individual Defendants to value their own continued involvement in the Company over the value offered to shareholders. Accordingly, the omission and/or partial disclosure of this information renders the summary provided in the Proxy misleadingly incomplete.

42.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

46.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

47.     Defendants have issued the Proxy with the intention of soliciting Select's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things: (i) financial projections for Select, First Bancorp, and the combined company; (ii) Raymond James' valuation analyses performed in support of its fairness opinion; (iii) the potential conflicts of interest faced by Raymond James; and (iv) the background of the Proposed Merger.

48.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Proxy, but failed to obtain and disclose such information to Select's shareholders, though they could have done so without extraordinary effort.

49.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. As officers or directors of the Company and signatories to the Proxy, the Individual Defendants

undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit shareholder consent; indeed, the Proxy states that Raymond James reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Raymond James, as well as their fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be misleadingly incomplete.  Indeed, the Individual Defendants were required to review Raymond James' analyses in connection with their receipt of the fairness opinion, question Raymond James as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in: (i) their decision to omit material information from the Proxy; or (ii) their failure to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as Select's officers and directors.

51.     Select is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Proxy.

52.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who

will be deprived of his right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Select's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Select within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Select, and participation in and/or awareness of Select's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Select, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants, as a signatory to the Proxy, was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Select, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of

the Board to approve the Proposed Merger.

57.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 14, 2021                              **MONTEVERDE & ASSOCIATES PC**

                                                  */s/ Juan E. Monteverde*
                                                  Juan E. Monteverde (JM-8169)
                                                  The Empire State Building
                                                  350 Fifth Avenue, Suite 4405
                                                  New York, NY 10118
                                                  Tel: (212) 971-1341
                                                  Fax: (212) 202-7880
                                                  Email: jmonteverde@monteverdelaw.com

                                                  *Attorneys for Plaintiff*